UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIEGO GONZALEZ-GARCIA,

     Petitioner,

v.                                 Case No. 8:23-cv-397-TPB-CPT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Diego Gonzalez-Garcia, a prisoner of the Florida Department of Corrections, files a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Gonzalez-Garcia claims counsel rendered constitutionally ineffective assistance and that his constitutional rights were violated during his jury trial. Respondent, Secretary of the Florida Department of Corrections, responds that Gonzalez-Garcia's claims are procedurally defaulted and meritless. Gonzalez-Garcia files a reply. Upon consideration of the petition (Doc. 1), the response in opposition (Doc. 7), and the reply (Doc. 15), the Court denies the petition.

## I.    Background

This case involves Gonzalez-Garcia's sexual abuse of his minor stepdaughter over a period of several years. In denying Gonzalez-Garcia's

motion for postconviction relief, the state court summarized the facts (Doc. 7-2 at 1363–64):

> The charged acts occurred in Florida but were part of a larger pattern of abuse that also occurred in [Gonzalez-Garcia's and the victim's] native country of Colombia. As part of the investigation, law enforcement had the victim make a controlled phone call to Defendant. Defendant made a number of substantially incriminating statements during this conversation, all but directly admitting to having a sexual relationship with the victim. The victim asked him various questions including "why did you do what you did," "why did you get involved with me," and "why did you take a girl who is eleven or twelve years old . . . and practically sexually abused me?" Defendant responded that it was not planned, he did not do it on purpose, and he did it because he felt a lot of affection for her. He stated that he had a lot of strong feelings for her as a father, then things started changing. He said that he has never been involved with someone younger than himself before, and that "this simply got out of hand." He stated that "it was different" and he felt calm "once [she] became of legal age." Defendant told her that he currently did not have a "woman" or "a girlfriend" because he was "never going to love anyone the way [he] loved [her]." He said "if I were like you say, I would be with another little girl your age but it's not like that because I am not with anybody" and he was "not looking for little girls your age to do that."

Gonzalez-Garcia was charged in a Fourth Amended Information with two counts of sexual battery on a child under twelve years of age by a person eighteen years of age or older (Counts One and Two), four counts of sexual battery on a person twelve years of age or older by a person in familial or

2

custodial authority (Counts Three through Six), and two counts of lewd or lascivious molestation (Counts Seven and Eight).  (Doc. 7-2 at 202–06)  He pleaded not guilty and proceeded to trial.

After a three-day day jury trial, Gonzalez-Garcia was found guilty as charged on Counts One, Three, Four, and Seven.  (*Id.* at 1170)  He was found not guilty on Count Five.  (*Id.*)  The court granted a judgment of acquittal on Counts Two, Six, and Eight.  (*Id.* at 631–32)

On January 4, 2017, Gonzalez-Garcia was sentenced to consecutive terms of life imprisonment on Count One, thirty years in prison on Counts Three and Four, and fifteen years in prison on Count Seven.  (*Id.* at 1173–77) The state appellate court affirmed his convictions and sentence without an opinion.  (*Id.* at 1266); *Gonzalez-Garcia v. State*, 256 So. 3d 160 (Fla. 2d DCA 2018).

Gonzalez-Garcia filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (*Id.* at 1269–1343)  He subsequently filed three amended Rule 3.850 motions.  (*Id.* at 1269–1360 and 1576–1622)  The state court denied the motions.  (*Id.* at 1362–1374 and 1624–28)  Gonzalez-Garcia appealed, and the state appellate court affirmed without a written opinion.  (*Id.* at 1674–75); *Gonzalez-Garcia v. State*, 334 So. 3d 313 (Fla. 2d DCA 2022).

Gonzalez-Garcia filed in the state appellate court a petition for writ of habeas corpus in which he alleged appellate counsel was constitutionally ineffective. (*Id*. at 1680–94)  The petition was denied without an opinion. (*Id*. at 1695–96)

Gonzalez-Garcia timely initiated this action by filing this federal habeas petition. (Doc. 1)  He raises five grounds for relief.  In Grounds One and Two, he raises related claims that counsel was ineffective for not calling Colombian witnesses to support his defensive strategy (Ground One) and that his constitutional rights were violated when those witnesses were not called at trial (Ground Two).  In Ground Three, he claims that counsel was ineffective for not calling to testify a Colombian physician who treated the victim.  In Ground Four, he claims that his constitutional rights were violated when evidence of other crimes he committed in Colombia was admitted at trial.  In Ground Five, he claims that the cumulative errors of the state court and counsel deprived him a fair trial.

## II.   Standards of Review

### A.   28 U.S.C. § 2254 Standard

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding.  *Carroll v. Sec'y, Fla. Dep't of Corr.*, 574 F.3d 1354, 1364 (11th Cir. 2009).  Habeas relief under AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of

4

the United States."  28 U.S.C. § 2254(a).  "The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction on a claim that his conviction was obtained in violation of the United States Constitution is strictly circumscribed."  *Green v. Sec'y, Fla. Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court."  *Id.* at 404.  First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

5

indistinguishable facts." *Id.* at 413. Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as

stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Sec'y, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied with reasons for the decision—such as summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 584 U.S. at 125. The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision." *Id.*

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioner's factual claim[.]" *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (quotation omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of

7

correctness afforded to a state court's factual findings only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Even where a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination.  *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022).  This is because a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous— so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination."  *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

## B.    Ineffective Assistance of Counsel Standard

To succeed under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), the petitioner must show both deficient performance by his counsel and prejudice resulting from those errors.  *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances."  *Id.* at 688.  A petitioner establishes deficient performance if "the identified acts or omissions

[of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland*

9

and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

### C.    Exhaustion and Procedural Default

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on federal habeas.  28 U.S.C. § 2254(b)(1)(A).  The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971).  The state court must have the first opportunity to review and correct any alleged violation of a federal right.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay—or dismiss without prejudice—a habeas case to allow a petitioner to return to state court to exhaust a claim.  *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982).  If the state court would deny the claim as procedurally barred under state law, the federal court instead denies the claim as procedurally defaulted.  *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

To excuse a procedural bar on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the

alleged violation of federal law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## III. Discussion

### A.  Ground One

Gonzalez-Garcia claims that trial counsel was constitutionally ineffective for not deposing or calling to testify witnesses from Colombia who would have supported his defensive strategy that the victim fabricated her testimony.  He asserts that two of the eight witnesses would have testified that they heard the victim say that she was going to retaliate against him because he told her mother that she was using drugs.  Gonzalez-Garcia notified counsel that these witnesses were available for depositions, but counsel neglected to contact them thereby prejudicing his defense.  (Doc. 1 at 6–7; Doc. 15 at 1–5)

Gonzalez-Garcia files affidavits from nine witnesses in support of this claim.  (Doc. 1-1 at 1–36)  Two witnesses—Gonzalez-Garcia's brother and father—attest that the victim threatened to retaliate against him for telling her mother that she was using drugs with her boyfriend. The remaining witnesses attest to Gonzalez-Garcia's good character and to the victim's drug usage but are silent as to whether and how the victim threatened to retaliate.

Gonzalez-Gacia previously raised this claim in ground one of his state postconviction motion and third amended state postconviction motion, as well as in his appeal from the denial of postconviction relief.  The state

11

postconviction court denied the claim after concluding that counsel's decision

not to call these Colombian witnesses to testify did not prejudice the defense

(Doc. 7-2 at 1365–67) (emphasis in original):

> Defendant claims trial counsel was ineffective for failing to call several witnesses on his behalf at trial. . . . Defendant proffers several witnesses that would have offered testimony on three issues: (1) Defendant's good character; (2) the victim was "hanging with a bad crowd" and using drugs; and (3) the victim threatened to retaliate against Defendant after he informed her mother that she was using drugs with her boyfriend.
>
> [T]he Court finds no reasonable probability that these witnesses' general testimony about Defendant's good, law-abiding character would have changed the outcome of this trial, given Defendant's incriminating statements during the controlled call in which he concedes to an inappropriate sexual and romantic history with the victim. Accordingly, this claim is denied as to the testimony about Defendant's good character.
>
> The remaining two issues go to the victim's motivation to fabricate the allegations as revenge for Defendant interfering with her relationship with her boyfriend. The jury was already apprised that the victim had a short-term romantic relationship with a boy her age who used drugs, and Defendant went to the victim's mother about those concerns. Trial counsel argued to the jury that these matters demonstrated Defendant's fatherly, non-sexual role in the victim's life, and the victim fabricated her allegations in response.
>
> The Court finds no reasonable probability that the proposed testimony about the victim and her boyfriend, or about the victim's alleged threats, would have changed the outcome of the trial. The jury had already learned of the victim's brief relationship with the boyfriend, that Defendant had tried to interfere by

12

bringing the issue up with her mother, and that the victim was aware of Defendant's interference. The jury rejected counsel's argument that the victim's allegations were a fabrication designed for revenge. The only new information added by the witnesses in this claim is that the victim allegedly made an explicit threat to retaliate against Defendant for his interference. However, nothing in the proffered testimony indicates that the victim threatened to *fabricate* the allegations, only that she threatened to retaliate against Defendant. Moreover, the fabrication defense is plainly inconsistent with Defendant's apologies and admissions during the controlled call when the victim confronted him about their romantic and sexual relationship. Whatever additional value can be found in testimony about explicit threats by the victim, without threats of fabrication, it is insufficient to overcome Defendant's own statements and admissions to the contrary.

The state postconviction court reasonably found that counsel's decision not to call these Colombian witnesses to testify did not prejudice Gonzalez-Garcia. "The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014). "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "counsel's errors [must be] so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id*. at 687. "Applying AEDPA to *Strickland*'s prejudice standard, [the court] must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice

13

[Gonzalez-Garcia]—that there was no substantial likelihood of a different result—was so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Mungin v. Sec'y, Fla. Dep't of Corr.*, 89 F.4th 1308, 1317 (11th Cir. 2024).

Gonzalez-Garcia fails to meet his burden.  In his reply, Gonzalez-Garcia complains that the jury rejected counsel's argument that the victim fabricated her allegations because counsel neglected to present any evidence at trial to support that conclusion.  (Civ. Doc. 15 at 4)   He argues, "[i]t cannot be presumed how a jury . . . would have reacted after hearing the testimony about [the victim's] threats to retaliate."  (*Id.*)  Gonzalez-Garcia's claim is pure speculation.  He presents no evidence that the proposed testimony from the Colombian witnesses would have supported his theory that the victim fabricated her allegations.  Notably, his brother and father do not go so far as to attest that the victim threatened to retaliate by fabricating testimony. (Civ. Doc. 1-1 at 11 and 16)  Rather, they merely attest that the victim threatened to retaliate against Gonzalez-Garcia for reporting to her mother that she was using drugs.  (*Id.*)  Nothing in the record—beyond Gonzalez-Garcia's pure speculation about how the jury would react—suggests that the victim threatened to retaliate by fabricating testimony.  Gonzalez-Garcia's "speculation" "is insufficient to carry his burden as a habeas corpus petitioner." *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001).

14

Furthermore, Gonzalez-Garcia fails to reconcile his fabrication theory with his apologies and admissions during the controlled call when the victim confronted him about their romantic and sexual relationship. And, the jury heard testimony about the victim's relationship with her boyfriend and Gonzalez-Garcia's reporting to the victim's mother about her drug use. Counsel's decision not to present cumulative evidence from the Colombian witnesses as to these facts was not prejudicial. *See Guardado v. Sec'y, Fla. Dep't of Corr.*, 112 F.4th 958, 984 (11th Cir. 2024) ("[N]o prejudice can result from the exclusion of cumulative evidence."). Because "some fairminded jurists could agree" that Gonzalez-Garcia failed to show prejudice, "federal habeas relief must be denied." *Hill v. Humphrey*, 662 F.3d 1335, 1346 (11th Cir. 2011).

## B.   Ground Two

Gonzalez-Garcia raises a related claim in Ground Two.[1] He claims that the state trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by denying his request to depose the Colombian witnesses and call them to testify at trial. He argues that these witnesses could have offered material, exculpatory testimony that would have cast doubt on his guilt and would have changed the outcome of the trial. Notably, when the trial court asked whether

---

[1] Gonzalez-Garcia describes Ground Two as "part and parcel of Ground One." (Doc. 15 at 5)

he was "aware of any witnesses that should be called at this portion of the trial," Gonzalez-Garcia responded, "No." (Doc. 7-2 at 621)

Respondent argues, and this Court agrees, that this federal claim is unexhausted and procedurally barred because Gonzalez-Garia neglected to present it to the state court. Before seeking habeas relief for a violation of federal law under § 2254, a petitioner "must exhaust all state court remedies available for challenging his conviction." *Preston v. Sec'y, Fla. Dept. of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) (quotations omitted). Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." *Jiminez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A petitioner must do more, however, than "scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). Moreover, a petitioner "does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief" to find the "federal claim." *Baldwin*, 541 U.S. at 32.

16

A petitioner may excuse a procedural default on federal habeas by showing cause for the default and actual prejudice from the alleged violation of federal law. *Maples v. Thomas*, 565 U.S. 266, 280 (2012). In his reply, Gonzalez-Garcia acknowledges his procedural default of this claim but urges the Court to excuse his procedural default, citing *Martinez v. Ryan*, 566 U.S. 1 (2012).

*Martinez* holds that (1) when a state court requires a defendant to raise an ineffective assistance of counsel claim in a collateral proceeding, a petitioner can (2) establish cause by showing either that the state court did not appoint him counsel in the proceeding or that appointed counsel was ineffective for failing to raise the claim and (3) establish prejudice by showing that the claim is a "substantial" one, or has "some merit." *Martinez*, 566 U.S. at 14. A petitioner shows that his defaulted claim is "substantial" by demonstrating that "reasonable jurists 'would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269–70 (11th Cir. 2014)).

A Florida court requires a defendant to raise an ineffective assistance of counsel claim in a collateral proceeding, and Gonzalez-Garcia was not appointed counsel in his state post-conviction proceeding. *Trevino v. Thaler*, 569 U.S. 413, 423–28 (2013); *Robards v. State*, 112 So. 3d 1256, 1266–67 (Fla.

17

2013).   Consequently, Gonzalez-Garcia must show that the procedurally defaulted claim has "some merit." *Martinez*, 566 U.S. at 14.

*Martinez* does not excuse Gonzalez-Garcia's default because his claim is not substantial.  566 U.S. at 14.  Specifically, he cannot show that he suffered prejudice from counsel's failure to call the Colombian witnesses to testify. The prosecution presented "substantial evidence" of Gonzalez-Garcia's guilt, including his incriminating statements during the controlled call in which he conceded to an inappropriate sexual and romantic relationship with the victim. *Fugate v. Head*, 261 F.3d 1206, 1224 (11th Cir. 2001); *see also McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) ("[T]he other substantial evidence of [petitioner's] guilt negates any possibility of prejudice resulting from his attorney's [allegedly deficient performance]."). Given the strength of the prosecution's case, Gonzalez-Garcia cannot show the requisite prejudice from the failure to present testimony of the Colombian witnesses. *See Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1300 n.9 (11th Cir. 2014) ("The overwhelming evidence of [petitioner's] guilt . . . makes it obvious that [he] cannot show *Strickland* prejudice.").

### C.   Ground Three

Gonzalez-Garcia claims that counsel was ineffective for not calling to testify a Colombian physician who treated the victim at the time of the alleged abuse.  He suggests that the physician would have testified that "her medical

18

report . . . showed there was no signs of sexual abuse" and that "the victim didn't seem to be under any pressure of coercion by the petitioner to omit certain facts about her sexual condition or history as the victim claimed was the case." (Doc. 1 at 17) He argues that this testimony would have bolstered his theory that the victim fabricated allegations of sexual abuse in retaliation against him. (*Id.* and Doc. 15 at 6)

Gonzalez-Garcia files the victim's medical records in support of this claim. (Doc. 1-1 at 40–52) The records show that the victim was treated on five dates in 2010 and 2012 for symptoms of general illness and abdominal pains. The records state that the victim was not sexually active.

Gonzalez-Garcia raised this claim in ground six of his state postconviction motion and third amended state postconviction motion, as well as on appeal from the denial of postconviction relief. The state postconviction court denied the claim (Doc. 7-2 at 1369):

> Defendant claims trial counsel was ineffective for failing to call the victim's doctor in Colombia to testify that the victim was still a virgin by the age of 17, contrary to her trial testimony and several of the charges. Trial counsel used the victim's medical records from Colombia during the victim's deposition. That deposition reveals that the medical records pertaining the victim's sexual activity were based solely on the victim's self-reporting. The victim also explained that she denied being sexually active during these visits because Defendant told her to do so, and Defendant frequently accompanied her as a guardian on the visits, including being present in the room

19

during the appointments.  Based on this record, the Court finds that trial counsel's decision not to call the victim's doctor at trial was not deficient, and Defendant was not prejudiced.

The state postconviction court reasonably found that counsel's decision not to call the Colombian physician to testify was neither deficient nor prejudicial.  Although the medical reports state that the victim was not sexually active, none of the reports states whether this information was obtained verbally from the victim or by physical examination.  And, the medical reports are silent as to whether she was examined for signs of sexual abuse or activity.  The state court record shows that counsel inquired about the medical records during the victim's deposition, and the victim testified that she was coerced into denying her sexual history because Gonzalez-Garcia accompanied her at the medical appointments.  (Doc. 7-2 at 1540)  She testified that Gonzalez-Garcia told her to deny her sexual history because "he didn't want [the victim's] mom to know about it."  (*Id.*)  Given these facts, counsel's decision not to call the Colombian physician to testify was a presumptively reasonable and strategic decision that is "virtually unchallengeable." *Mendoza v. State*, 81 So.3d 579, 581 (Fla. 3d DCA 2012) ("[I]f counsel conducts a reasonable investigation of a potential witness, the subsequent decision not to call such a witness is 'virtually unchallengeable.'").

Once such a presumption arises, a petitioner can only overcome it by showing that "'no competent counsel' would have made the same decision." *Id.* (quoting *White v. State*, 729 So.2d 909, 912 (Fla. 1999)). Gonzalez-Garcia fails to overcome this burden. He neglects to provide an affidavit from the Colombian physician. He merely speculates that the "physician's testimony that [the victim] was a virgin prior to her 17th birthday would have freed [him]." (Civ. Doc. 15 at 6) "Such speculation cannot form the basis of a valid claim." *Estiven v. Sec'y, Dept. of Corr.*, No. 16-14056, 2017 WL 6606915, at *4 (11th Cir. Sept. 28, 2017) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a movant is not entitled to habeas relief when his claims are merely "conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible") and *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.")). Gonzalez-Garcia has not shown that failing to call the Colombian physician was so patently unreasonable that no competent counsel would have made that decision. Nor has he shown a reasonable probability the jury would have reached a different verdict after hearing the physician's testimony.

**D.    Ground Four**

Gonzalez-Garcia claims the state trial court violated his Fifth and Fourteenth Amendment rights by admitting evidence of uncharged offenses he committed against the victim in Colombia.  He argues that these offenses "happened in different ways and under different circumstances than the charged offenses in the United States." (Doc. 1 at 20–21)  He further argues that one of the incidents occurred when the victim was older than the age of consent in Colombia and therefore was not a criminal incident.  (*Id*. at 21)  He argues that this evidence was so prejudicial that it violated his constitutional rights.

Before trial, the court admitted evidence of Gonzalez-Garcia's collateral offenses against the victim under *Williams v. State*, 110 So. 2d 654 (Fla. 1959) and Florida Statute § 90.404(2)(b).  (Doc. 7-2 at 208–215)  The trial court found that the collateral offenses were "probative towards corroborating [the victim's] allegations and testimony regarding the charged crimes" and that "any danger of unfair prejudice flowing from such evidence d[id] not substantially outweigh the probative value." (*Id*. at 213)

Gonzalez-Garcia challenged this ruling on direct appeal and argued that the *Williams* rule evidence of the collateral crimes was "not sufficiently similar to the allegations in the charged offenses" and was "not reliable."  (Doc. 7-2 at 1211)  The state appellate court affirmed without an opinion.  (Doc. 7-2 at 1266)

Respondent argues, and this Court agrees, that this claim is unexhausted and procedurally barred because Gonzalez-Garia neglected to allege a federal constitutional violation relating to the trial court's admission of the *Williams* rule evidence. Gonzalez-Garcia neglected to cite any federal law or otherwise alert the state court that he was attempting to raise a federal constitutional claim. Circuit caselaw is clear that the petitioner must explicitly invoke federal law to sufficiently exhaust his claims in state court; "it [is not] sufficient that all facts necessary to support the [federal] claim were before the state courts or that a somewhat similar state-law claim was made." *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1343–44 (11th Cir. 2004) (cleaned up). Because Gonzalez-Garcia failed to reference federal law on direct appeal, his federal constitutional claim challenging the admission of other crimes evidence was not exhausted. *See Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007) ("[T]o exhaust state remedies fully, the petitioner must make the state court aware that the claims asserted present federal constitutional issues.").

In his reply, Gonzalez-Garcia appears to acknowledge his procedural default of this claim but suggests that appellate counsel's ineffective assistance constitutes cause to excuse his procedural default. (Doc. 15 at 7) He vaguely points to appellate counsel's "omission" of the federalized claim. However, a "claim of ineffective assistance" must "be presented to the state courts as an

23

independent claim before it may be used to establish cause for a procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000).  Because Gonzalez-Garcia did not "raise his ineffective-assistance-of-appellate-counsel claim [based on appellate counsel's failure to federalize his challenge to the trial court's admission of the *Williams* rule evidence] in state court, he has failed to exhaust (and thus cannot now press) his only argument for cause." *Ledford v. Warden, Ga., Diagnostic Prison*, 975 F.3d 1145, 1161 (11th Cir. 2020). Accordingly, Gonzalez-Garcia has not shown that an exception applies to overcome the default, and this claim is barred from federal habeas review.

### E.    Ground Five

Gonzalez-Garcia vaguely claims that cumulative errors of the state trial court and counsel violated his constitutional rights to effective assistance of counsel and a fair trial. (Doc. 1 at 23–24)  He supports this claim with little explanation or detail. (Doc. 15 at 5 and 7)

"The cumulative error doctrine provides that an aggregation of non-reversible errors (*i.e.*, plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005). "[Courts] address claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [the court] find[s] in the aggregate and in light of the trial as a whole to determine whether the

24

[petitioner] was afforded a fundamentally fair trial." *Morris v. Sec'y, Dept. of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).

Gonzalez-Garcia's claim of cumulative error fails because none of his individual claims of error or prejudice have any merit, and therefore, there is "nothing to accumulate." *Id.* "[W]here there is no error in any of the trial court's rulings, the argument that cumulative trial error requires that this Court reverse [the petitioner's] convictions is without merit." *Id.* (quotations omitted).

## IV. Conclusion

Accordingly, it is **ORDERED** that Gonzalez-Garcia's petition (Doc. 1) is **DENIED**.  The Clerk is directed to enter judgment against Gonzalez-Garcia and to **CLOSE** this case.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a "circuit justice or judge" must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make such a showing, a petitioner must demonstrate that "reasonable jurists would have the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 276 (2004) (quoting *Slack v. McDaniel*, 529

U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (citations omitted). Gonzalez-Garcia has not made the requisite showing. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Gonzalez-Garcia must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 2nd day of February, 2026.

**TOM BARBER**
**U.S. DISTRICT JUDGE**